IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA**

v.                                                          Case No: 4:02cr52-RH

**ERIC EUGENCE BALCOM**
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR FIRST STEP ACT SENTENCE REDUCTION

The UNITED STATES OF AMERICA, by and through the undersigned Assistant United States Attorney, responds to Defendant's Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act (ECF No. 176) and to the Court's Order Setting Procedures for a Possible Sentence Reduction (ECF No. 169). For reasons outlined below, the government does not oppose Defendant's request for relief.

BACKGROUND

In two sales conducted two weeks apart in August 2002, Defendant sold a confidential informant a total of 93.2 grams of cocaine base. PSR ¶¶ 9, 10. On February 3, 2003, Balcom pleaded guilty to conspiracy to distribute more than 50 grams of cocaine base (Count One). PSR ¶ 7.

Defendant scored seven criminal history points, which would have placed him in Criminal History Category IV, but for his status as a Career Offender, which resulted

in a Criminal History Category of VI.  Balcom's criminal history included a 1992 conviction for battery arising from an incident in which he slapped his girlfriend multiple times, and a 1996 aggravated assault conviction arising from a shooting in which Balcom fired several rounds at a man in another car.  PSR ¶ 34.

Balcom was subject to an enhanced statutory minimum of life imprisonment based upon his prior convictions for possession of cocaine in 1996, and possession of cocaine with intent to sell in 1998.  PSR ¶¶ 35, 36.  The 1996 conviction arose from investigators' discovery of a cocaine base manufacturing operation involving three microwave ovens and other paraphernalia at Balcom's home when they arrested him on a warrant for Attempted First Degree Murder arising from the shooting he had committed a week earlier.  PSR ¶ 35.  The 1998 conviction arose from Balcom's possession of five grams of cocaine base packaged for sale while he was on probation for the 1996 conviction.  PSR ¶ 36.

During the presentence interview, Balcom said he had been selling cocaine base for "about a month" before he was "caught."  PSR ¶ 14.  He indicated that he would buy $200 to $300 worth of crack and sell it for a profit.  PSR ¶14.  The sales of cocaine for which Balcom was indicted (Counts Two and Three) occurred in August 2002; he was arrested more than three months later, on December 4, 2002.  The two sales did not involve $200 to $300 worth of cocaine base.  The first sale was for $2,100 worth of cocaine base, the second was for $1,200. At sentencing, Defendant was held accountable for only the 93.2 grams of cocaine base he actually sold to the confidential

informant in August 2002. The government did not object to this determination or seek to offer evidence of additional drug quantities. Such evidence would not have altered the sentence in the case.

Defendant's unenhanced sentencing range was 262 to 327 months' imprisonment, based upon a Criminal History Category of VI, and Offense Level of 34. PSR ¶ 74. As enhanced by his prior convictions, Balcom faced a statutory minimum sentence of life imprisonment, which the court imposed on August 18, 2003. PSR ¶ 73; ECF No. 54.

Defendant now seeks a reduction in sentence to 228 months' imprisonment under the First Step Act of 2018 (2018 FSA). The government does not oppose such a reduction.

## POSITION ON SENTENCE REDUCTION

Balcom is eligible for a reduction in sentence under the 2018 FSA, which permits the district court, in its discretion, to impose a reduced sentence as if the Fair Sentencing Act of 2010 (2010 FSA) were in effect at the time the defendant's offense was committed. *See* 2018 FSA, Section 404. Had Balcom been sentenced under the 2010 FSA, the enhanced sentence of life imprisonment would no longer apply, and his unenhanced guideline range would remain 262 to 327 months. He would also be subject to an enhanced statutory minimum sentence of 10 years' imprisonment.

Defendant correctly notes that in its initial analysis of the case, the government concluded that any reduction in sentence should be within the guideline range of 262

3

to 327 months. The nature of the offense and the history and characteristics of the defendant weighed heavily against Defendant in this analysis. It is an over-simplification to suggest that Defendant's sale of 93.2 grams of crack was what landed him a life sentence. Although Defendant was only scored for the cocaine base that he sold on two occasions, the conspiracy, by his own admission, would have involved more than 93.2 grams, as Defendant himself acknowledged he had been selling crack for about a month before he was arrested. PSR ¶ 14. Defendant claimed that he would buy $200 to $300 worth of crack at a time and sell it for a profit. PSR ¶ 14. The conduct underlying the substantive distribution counts in this case strongly indicates that Defendant was accountable for considerably more crack than the 93 grams for which he was scored. On August 7, and August 23, 2002, roughly three months before his arrest, Defendant sold not $200 to $300, but $2,100 and $1,200 worth of cocaine to a confidential informant. His prior drug convictions further suggest that Defendant was in and out of the drug business for years, rather than months. *See* PSR ¶¶ 35, 36.

But it is Defendant's violent criminal history that provides the most compelling reason for a sentence within the guideline range. His convictions for what was essentially a drive-by shooting, and for battery on his girlfriend, combined with his four separate arrests for battery/assault, three of them aggravated, must give pause to anyone considering release of Defendant back into the community. Indeed, that appears to have been the conclusion of the last President of the United States, who, in September 2016, denied Defendant's commutation petition without taking so much as a day off

4

his life sentence.  *See* www.justice.gov/pardon/obama-denials/commutations-denied-president-barack-obama.

On the other hand, Defendant's post-sentencing conduct militates in favor of the relief he seeks.  His age, participation in drug treatment, anger management, and vocational programs, his role as a Suicide Companion, and his graduation from the faith based Life Connection Program, along with the relative remoteness of his prior criminal conduct, are factors that would likely convince a court to vary below the guideline range were Defendant sentenced today.  Accordingly, but with some reluctance, the government does not oppose Defendant's request for a reduction of sentence to 228 months' imprisonment.

Respectfully submitted,

LAWRENCE KEEFE
United States Attorney

*s*/Karen Rhew-Miller

Karen Rhew-Miller
Chief, Appellate Division
Assistant United States Attorney
D.C. Bar No.: 405181
111 North Adams Street, 4th Floor
Tallahassee, Florida 32301
(850) 942-8430
karen.rhew-miller@usdoj.gov

## LOCAL RULE 7.1(F) CERTIFICATE

I certify that the above response complies with the length limit set forth in N.D. Fla. Loc. R. 7.1(F). This response contains 1,166 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing response was served via ECF notification on counsel of record, this 27th day of February 2019.

s/ *Karen Rhew-Miller*
Karen Rhew-Miller